Filed 10/30/24  Preovolos v. Preovolos CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ATHANASIOS K. PREOVOLOS, Plaintiff and Appellant, v. PETER PREOVOLOS, Defendant and Respondent. | D081718 (Super. Ct. No. 37-2022-00006654-CU-BC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Richard S. Whitney, Judge.  Reversed and remanded with directions.

Law Offices of Sondra S. Sutherland and Sondra S. Sutherland for Plaintiff and Appellant.

Horvitz & Levy, Eric S. Boorstin and Jeremy B. Rosen; Caietti Law Group, Robert M. Caietti and Kristin A. Kameen; Withers Bergman, Jeremiah J. Moffit and Ann M. Wicks for Defendant and Respondent.

Plaintiff and appellant Athanasios (Thanasi) Preovolos appeals from a judgment of dismissal entered after the trial court sustained without leave to

amend the demurrer of defendant and respondent Peter Preovolos,[1] to Thanasi's first amended complaint. In that pleading, Thanasi alleged 20 individual causes of action based on what he claimed were his parents' false representations concerning ownership interests in family business assets, and derivative causes of action to declare him and another company, Alpha & Omega Financial Management Consultants, Inc. (Alpha), the owner of shares of stock in PenChecks, Inc. (PenChecks). The trial court sustained Peter's demurrer without leave to amend. In part, it ruled Thanasi should have pleaded some of his claims (the first, third, eighth, tenth and thirteenth causes of action) as compulsory cross-claims in a legal malpractice action that Peter brought against him. It ruled an oral breach of contract claim relating to Peter's promises to pay for Thanasi's children's private schooling (second cause of action) was barred by the statute of limitations. The court ruled Thanasi's fraud claims (the fourth, fifth and sixth causes of action) did not contain sufficiently specific and particular allegations. It ruled as to Thanasi's derivative claims that he had not alleged facts showing compliance with Corporations Code section 800, subdivision (b)(2). The court also struck Thanasi's punitive damages allegations.

Thanasi challenges the court's rulings, including on grounds it erred by sustaining the demurrer—Peter's first—without giving him any opportunity to amend and cure defects. For some of the causes of action, Thanasi proffers new allegations that assertedly make them viable. He contends the court

---

[1] Athansios goes by the name Thanasi. Both Peter and Litsa Preovolos, Thanasi's parents, were defendants in the trial court. We refer to the parties by their first names for clarity, not out of disrespect. We granted in part Thanasi's motion to augment the record on appeal with items required as part of the clerk's transcript, as well as other documents including Litsa's answer to Thanasi's first amended complaint, a recusal order, and Peter's objections to Thanasi's proposed judgment of dismissal.

erred by striking his punitive damages allegations. We conclude that as to Thanasi's second cause of action—alleging breach of an asserted oral agreement that Peter would pay for Thanasi's children's private schooling—the trial court erred by applying the statute of frauds so as to sustain Peter's demurrer without leave to amend. As to that claim, we conclude the complaint does not clearly and affirmatively show it is barred by the statute of limitations. We further conclude the court should have sustained Peter's demurrer to Thanasi's thirteenth declaratory relief cause of action with leave to amend. Otherwise we hold the court did not err by sustaining Peter's demurrers without leave to amend. We affirm the court's order striking Thanasi's punitive damages allegations, which fall with the nonviability of his fraud claims. We reverse the judgment with directions that the court enter a new order on Peter's demurrer set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

We take the underlying facts from the well-pleaded material factual allegations in Thanasi's operative first amended complaint, accepting those allegations as true. (*Quishenberry v. UnitedHealthcare, Inc.* (2023) 14 Cal.5th 1057, 1062; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

Thanasi and his two brothers are the children of Peter and Litsa, who raised them in the Greek and Orthodox tradition, and always insisted they put family above individual needs. Thanasi and his brothers performed household chores without any allowance, and later at Peter and Litsa's demand performed uncompensated work and services for the family business, Alpha, which Litsa formed in about 1976. The siblings performed other uncompensated work or services for Peter's church program and then for an office building Peter and Litsa purchased. Peter and Litsa repeatedly told Thanasi and his siblings that they had to take care of the building because it

3

was their inheritance. For years, Peter and Litsa stressed the importance of private school, and promised Thanasi they would pay for his children to attend private school through high school. In reliance on those promises, Thanasi sent his children to private schools but paid for all of the expenses himself. At the time of the first amended complaint's filing two of Thanasi's children were in college, while the third was still in high school.

In 1979, Peter and Litsa gifted Thanasi and his brothers an interest in Alpha. They received additional shares in 1985 and in 1997 from their grandmother. Despite their ownership interest, Peter and Litsa initially excluded Thanasi and his siblings from company governance. As Thanasi and his siblings became more involved, they discovered that Peter and Litsa were ignoring Alpha's corporate formalities, paying their personal expenses through the company, stripping it of cash, distributing all of its profits to themselves, and taking personal loans from the company without repaying them. Thanasi and his brothers demanded that Peter and Litsa change their behavior, but they refused.

In 1994, Peter and Litsa started PenChecks with several other industry partners. Alpha made the initial capital contribution on their behalf. Thanasi, then a post-bar graduate law clerk, was required to provide legal services on PenChecks' behalf and did so uncompensated for over twelve years. In lieu of compensation for Peter or Litsa, PenChecks paid Alpha for services, so that Alpha essentially received a revenue share from PenChecks. As this increased, it became obvious that this was an important source of revenue for the family.

Beginning in about 1996, Peter and Litsa promised Thanasi that one day he and his brothers would inherit the family business and their estate, and thus Thanasi would be compensated "on the back end" for hours of his

4

legal work. They promised Thanasi and his siblings that they would split Peter and Litsa's ownership in all of the various family businesses.

In about July 2003, PenChecks required an additional cash infusion. Because neither Peter, Litsa, nor Alpha had available funds, Peter approached Thanasi, who agreed to loan personal savings to Peter for the capital contribution. Peter could not say when he and Litsa would be able to repay the loan, but Thanasi told Peter he could repay it when he could, and that the worst-case scenario was that Thanasi would get it back as part of his inheritance. The loan has not been repaid, nor did Thanasi receive any shares Peter and Litsa purchased.

Peter believed that PenChecks was an important asset for family income and Peter and Litsa's retirement, so their family decided to acquire as much of PenChecks as possible. Thanasi assisted Peter and Litsa to do so, and negotiated the purchase of two deceased shareholders' interests such that their family obtained a majority interest in PenChecks. To accomplish this, Alpha took out two separate business loans and borrowed over $600,000, repaying the bank for each loan. Peter and Litsa maintained the PenChecks shares in their name and then in the name of their revocable living trust, which was agreeable to Thanasi and his siblings as Peter and Litsa's estate plan had always named them as their heirs. Nevertheless, it was always the intent that Alpha would acquire PenChecks.

In or about 2014, Peter and Litsa entered into a postmarital agreement and irrevocable trust, which Thanasi drafted at their request. The documents were consistent with their prior estate plans and their promises to Thanasi and his siblings. At the end of 2015, Peter and Litsa first told Thanasi's siblings about these agreements and how they came about.

5

In or about 2016, Peter sought independent legal advice with respect to the postmarital agreement and the irrevocable trust and his rights under them. He told Thanasi that he wanted a second opinion to make sure that he (Peter) and Litsa were treated equally.

In 2018, a disagreement developed between Peter and the other shareholders over the way he ran PenChecks, specifically its failure to turn a profit or distribute money to shareholders. Thanasi and one of his brothers decided this was an opportunity to buy out the remaining shareholders, which they accomplished after months of negotiations. Afterwards, Peter began acting behind the backs of the other family members. He attempted to sell PenChecks without anyone's approval, he refused to attend family meetings and he became angry if any family member disagreed with him.

In or about June 2020, Thanasi received a letter from Peter's counsel that Peter was "prepared to pursue his legal claims to the fullest extent of the law . . ." in connection with the postmarital agreement and irrevocable trust as well as the various family businesses. In the letter, Peter claimed Thanasi had engaged in fraud and elder abuse, among other things, which entitled him to heightened damages and attorney fees.

Due to their growing disconnection, and Peter's erratic and threatening behavior, Litsa filed for divorce in July 2020. In connection with that dissolution proceeding, Peter and Litsa stipulated to set aside the postmarital agreement and irrevocable trust. Later that year, Peter filed a lawsuit (*Preovolos v. Preovolos* (Super. Ct. San Diego County, 2021, No. 37-2020-00040896-CU-PN-CTL)) alleging Thanasi had committed legal malpractice in preparing the postmarital and irrevocable trust (the legal malpractice action). Peter also filed a probate matter (*In the Matter of the Peter E. Preovolos & Litsa S. Preovolos Irrevocable Trust Dated July 31, 2014* (Super.

6

Ct. San Diego County, 2021, No. 37-2020-00035119-PR-TR-CTL)) against the other family members to, among other things, invalidate the various documents Thanasi had prepared.

In February 2022, Thanasi filed suit against Peter and Litsa, alleging numerous individual and derivative causes of action. The following month he filed a first amended complaint adding claims for a constructive trust and specific performance. Thanasi alleged causes of action for breaches of Peter and Litsa's oral agreements to compensate Thanasi for his legal work, provide a share of the various family businesses as an inheritance, or pay for his children's private schooling, as well as breach of the covenant of good faith and fair dealing. He alleged causes of action for fraud, breach of fiduciary duty, conversion, defamation, unjust enrichment, intentional interference with prospective economic relations and intentional infliction of emotional distress. He asked for declaratory relief, an accounting and a constructive trust as well as specific performance of the post-marital agreement and irrevocable trust. Thanasi also filed derivative claims on Alpha's behalf for breach of fiduciary duty, unjust enrichment, declaratory relief and specific performance. The derivative claims are based on the fact Peter and Litsa are the sole owners of PenChecks despite Alpha's investment and contribution to its acquisition; these claims seek restitution, disgorgement of profits and compensation as well as a judicial declaration that Alpha owns all PenChecks shares held by Peter and Litsa.

In response to Peter's ex parte application, the court ordered Peter's legal malpractice action and the present case related to each other and

7

assigned them to the same department.[2]  Peter then demurred to all of the causes of action in Thanasi's first amended complaint, partly based on the overlap and effect of the legal malpractice action and various probate actions. He broadly argued Thanasi's complaint had been filed so as to avoid the probate court's and family court's exclusive jurisdiction as well as to obtain relief, including a constructive trust, in order to "strip Peter of most of his assets [and] deprive Peter of their use, providing them instead to [Thanasi]." Peter asserted specific flaws with each cause of action, including based on Thanasi's failure to allege them as compulsory counterclaims, the statutes of limitation, litigation privilege, deficient pleading standards including as to fraud, and, for the derivative claims, failure to allege compliance with Corporations Code section 800, subdivision (b).  Peter asserted a plea in abatement.  (Code Civ. Proc., § 430.10, subd. (c).)  He asked the court to take judicial notice of several of the prior actions and petitions, as well as other court records and this court's opinion affirming an order disqualifying Thanasi's law firm from representing Thanasi in connection with one of Peter's probate petitions.  Peter also moved to strike Thanasi's defamation cause of action, as well as the punitive damages allegations in the first amended complaint.

Thanasi opposed the motion.  He argued his claims in the first amended complaint did not arise out of the same transactions or occurrences as Peter's malpractice case, and thus were not compulsory cross-claims.  He argued he sufficiently pleaded his claims for breach of contract, fraud, intentional infliction of emotional distress, breach of fiduciary duty,

---

[2]    The court also ordered *Preovolos v. Preovolos* (Super. Ct. San Diego County, 2023, No. 37-2022-00014821-CU-MC-CTL) related, though Peter did not include that case in his application.

8

declaratory relief, specific performance, and for an accounting, and that the breach of contract claims were not barred by the statute of frauds. He argued for purposes of his derivative claims the facts alleged in his complaint demonstrated it would have been futile to make a demand on Alpha's board. According to Thanasi, Peter's plea of abatement failed in view of the fact Peter had "filed three lawsuits against his family." Thanasi also opposed Peter's motion to strike, arguing first that the court could not determine at the pleading stage the propriety of punitive damages, but that in any event the evidence would establish Peter's actions and conduct were "fraudulent and malicious and subject to punitive damages."

In his demurrer reply papers, Peter pointed out that Thanasi had not addressed the defamation, unjust enrichment, and intentional interference with prospective economic advantage (ninth, tenth and eleventh causes of action).[3] He argued Thanasi's opposing arguments were conclusory and deficient for various reasons, and asked the court to sustain the demurrer without leave to amend. As for his motion to strike, Peter asserted Thanasi had not made valid opposing arguments, and had conceded the propriety of striking his defamation claim.

---

[3] On appeal, Thanasi does not address the ninth, eleventh, and seventeenth causes of action for defamation, interference with prospective economic advantage, or derivative claim for unjust enrichment. He maintains he has challenged the court's ruling as to his eighth, tenth, and fourteenth causes of action for conversion, unjust enrichment, and declaratory relief in connection with other claims. Though the trial court did not address the fourteenth cause of action in its ruling, it sustained Peter's demurrer to the entire complaint, implicitly including this declaratory relief cause of action. Thanasi gives us no reason to disturb the court's ruling as to these causes of action.

9

After considering the parties' arguments and evidence,[4] the trial court sustained Peter's demurrer without leave to amend. It ruled some of the causes of action (the first, third, eighth, tenth, eleventh and thirteenth) were related to Peter's legal malpractice action, and Thanasi should have raised them in that action.[5] It ruled the first breach of oral contract cause of action was additionally barred as based on promises to make a will without supporting facts meeting Probate Code section 21700, subdivision (a) requirements, and the second breach of oral contract cause of action alleging Peter's promise to pay for Thanasi's children's private schooling violated Civil Code section 1624, subdivision (a)(2), which invalidates contracts for a "special promise to answer for the debt, default, or miscarriage of another . . . ." According to the court, Thanasi's fraud claims (fourth, fifth and sixth causes of action) were "insufficiently particular, at a minimum, as to when, by what means, and how the [fraudulent] representations were made." As to those claims, it further ruled "[t]here is no indication of how

---

[4]     The court's ruling begins: "The Court, having taken the above-entitled matter under submission . . . , and having fully considered the argument of all parties, both written and oral, *as well as the evidence presented*, now rules as follows:" (Italics added.) We read the emphasized part of the order as granting Peter's request for judicial notice of various documents. Thanasi does not advance any argument on appeal that the court in ruling on the demurrer erred by considering these items.

[5]     As the court acknowledged, Peter also argued that the eleventh and twelfth causes of action should have been brought as compulsory cross claims in the legal malpractice action. In its ruling, the court stated the eleventh cause of action concerned rendering of legal services. It also referenced Thanasi's claim for intentional infliction of emotional distress—stating it was "unclear what [Thanasi] is asserting is the basis for the [emotional distress] cause of action." The court ultimately sustained the demurrer to the eleventh and twelfth causes of action on different grounds.

often the alleged promises were made, whether [Peter] or [Litsa] or both made the promises at specific times, or whether they were spoken, written, or made in some other manner." The court ruled there were "no facts to support [Peter] or [Litsa] 'knew [the representations] to be false' and 'were made with the intent to defraud and deceive [Thanasi].' " For various other reasons set out more fully below, it ruled Thanasi's allegations were insufficient to support his remaining individual claims for breach of fiduciary duty, conversion, unjust enrichment, intentional infliction of emotional distress, declaratory relief, an accounting, constructive trust, and specific performance.

As for Thanasi's derivative claims, the court pointed to Thanasi's allegation that a demand on Alpha's board would be a "futile and useless act" as "[i]t is clear that Peter and Litsa will not vote against their interests and any vote by the board on a demand by [Thanasi] would result in in a 2-2 stalemate." The court ruled Thanasi failed to point to alleged facts supporting the "conclusory statements." It ruled Thanasi "[i]n any event . . . has not alleged he complied with Corporations Code section 800[, subdivision] (b)(2). [Thanasi] must allege he 'has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which [Thanasi] proposes to file.' "

Finally, the court granted Peter's motion to strike Thanasi's punitive damages allegations, reasoning that because Thanasi had not properly alleged any cause of action he could not allege "despicable conduct carried on by [Peter] with a willful and conscious disregard of the rights or safety of others," conduct " 'so vile, base, or contemptible that it would be looked down

11

on and despised by reasonable people,' " or conduct " ' "[having] the character of outrage frequently associated with crime." ' "

Thanasi filed this appeal from the ensuing judgment of dismissal.

DISCUSSION

I. *Standard of Review*

" 'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.' [Citation.] ' " ' "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context.' " ' " (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; see also *Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370.) " 'If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. "[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory . . . ." ' " (*Zhang,* at p. 370, see also *id.* at p. 383.) We examine the trial court's " 'result for error, and not its legal reasoning' " in sustaining the demurrer. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 478; *Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1145.)

It is Thanasi's burden to show in what manner he can amend his pleading and how that amendment will change its legal effect. (See *HFH, Ltd. v. Superior Court* (1975) 15 Cal.3d 508, 513, fn. 3.) Such a showing may be made for the first time on appeal. (*Smith v. BP Lubricants USA Inc.*

12

(2021) 64 Cal.App.5th 138, 144-145.)  But when a party's first demurrer to an operative pleading has been sustained without leave to amend, the question becomes whether the pleading shows on its face that it is incapable of amendment.  (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 747 ["[L]eave to amend is properly granted where resolution of . . . legal issues does not foreclose the possibility that the plaintiff may supply necessary factual allegations"]; *City of Santa Cruz v. Superior Court of Santa Cruz County* (2024) 101 Cal.App.5th 475, 490; *Apple Inc. v. Superior Court* (2017) 18 Cal.App.5th 222, 258-259.)  In such a case, " '[d]enial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained.' " (*Eghtesad v. State Farm General Insurance Company* (2020) 51 Cal.App.5th 406, 411, 412; see also *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* (2023) 94 Cal.App.5th 764, 800.)

## II.  *The Parties' Requests for Judicial Notice*

Both parties request we judicially notice items that they assert are relevant to the issues on appeal.  Thanasi has filed two separate requests, and Peter one request.

Thanasi first requests we judicially notice an order granting Peter leave to file a second amended and supplemental complaint in his legal malpractice action, and the fact Peter filed a second amended complaint.[6] Thanasi asserts the documents are relevant to "show subsequent events rendering moot the court's order sustaining Peter's demurrer to the first, third and thirteenth causes of action for failure to file compulsory cross-complaints."  Thanasi's counsel states in an accompanying declaration her

---

[6]    Thanasi had also sought judicial notice of a demurrer he had filed to that complaint, but withdrew that request.

13

belief that the "items are relevant to the issues on appeal for the reasons dissuss [*sic*] in this motion and in the opening [appellate] brief." (Some capitalization omitted.)

Peter requests judicial notice of operative complaints filed by Alpha against him after entry of judgment in this case (*Alpha & Omega Financial Management Consultants, Inc. v. Preovolos, et al.* (Super. Ct. San Diego County, 2023, case No. 37-2023-00023235-CU-BT-CTL) and *Alpha & Omega Financial Management Consultants, Inc. v. Preovolos, et al.* (Super. Ct. San Diego County, 2023, No. 37-2023-00046755-CU-BT-CTL)), Thanasi's answer to Peter's second amended complaint in his legal malpractice action, and this court's February 24, 2022 nonpublished opinion, *Prevolos v. Prevolos,* D078711 (Feb. 24, 2022). Peter argues Alpha's claims duplicate Thanasi's derivative claims, and thus are "relevant to whether Thanasi can plausibly allege that the Alpha . . . board refused his requests to bring claims against Peter or whether making such a request would have been futile." Peter cites to multiple pages of Thanasi's opening brief, as well as a section of his respondent's brief, as support. Peter argues Thanasi's answer shows he did not file any cross-claims in Peter's legal malpractice action. With respect to this court's prior opinion, Peter asserts that it shows "Thanasi's longtime representation of Peter and the family companies," and is "relevant to Thanasi's adequacy as a plaintiff to bring a derivative action against Peter." Again, Peter cites to a portion of his respondent's brief as support.

In opposition to Peter's request (which is limited to Thanasi's answer and the prior appellate opinion), and also in his reply brief on appeal, Thanasi admits he has answered Peter's legal malpractice second amended complaint without asserting a cross-complaint. He states that as a result, "the issue remaining on appeal is whether his thirteenth cause of action [for

14

declaratory relief] is 'related.'" Based on this concession, Thanasi withdraws one of his arguments concerning his need to file compulsory cross-claims, that is, the inapplicability of Code of Civil Procedure section 426.30.

We grant Peter's unopposed request as to the Alpha lawsuits, taking judicial notice of their filing and the nature of the actions as court records (Evid. Code, §§ 452, subd. (d), 459) but not the truth of facts stated in them. (*People v. Franklin* (2016) 63 Cal.4th 261, 280; *Day v. Sharp* (1975) 50 Cal.App.3d 904, 914.) This is proper notwithstanding the fact the complaints were not before the trial court, which generally prohibits judicial notice on grounds " ' "an appellate court will consider only matters which were part of the record at the time the judgment was entered." ' " (*Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 625.) An exception to this rule exists in cases in which "subsequent events have caused issues to become moot." (*Reserve Insurance Co. v. Pisciotta* (1982) 30 Cal.3d 800, 813 [taking judicial notice of records demonstrating insurer's postjudgment insolvency].) As discussed below, Alpha's filing of its own lawsuits against Peter (and also Litsa, in one of the actions) moots the issues relating to Thanasi's derivative claims.

We otherwise deny the requests for judicial notice. Thanasi's judicial admission (see *Davenport v. Blue Cross of California* (1997) 52 Cal.App.4th 435, 444, fn. 4 [taking factual assertions in appellate briefing as admissions]; *Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 747 [same]) that he answered Peter's legal malpractice action without asserting a cross-complaint eliminates any need for us to take judicial notice of Peter's pleading.

And both Thanasi's and Peter's requests, which make conclusory points and incorporate arguments from portions of appellate briefs, are unsupported by meaningful legal argument as to their relevance in any event. It is settled

that such incorporation by reference is improper. (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 294, fn. 20 [it is well settled the Court of Appeal does not permit incorporation by reference of arguments advanced in appellate briefs].)  That Peter fails to explain or develop his contentions, or cite any relevant legal authority in support, forfeits them.  (See *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700 ["When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing court is unnecessary"]; see also *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99.)  Though an appellate court can take judicial notice of its prior unpublished opinions (*ZF Micro Devices, Inc. v. TAT Capital Partners, Ltd.* (2016) 5 Cal.App.5th 69, 73, fn. 3), we do not do so here absent a meaningful discussion of their relevance.

In his second request, Thanasi seeks judicial notice of the register of actions as well as Peter's demurrer papers in the Alpha lawsuits.  Thanasi admits these items were not before the trial court; he argues they are nevertheless relevant to Peter's assertion that Thanasi cannot bring derivative claims in view of Alpha's lawsuits.  According to Thanasi, they show Peter is "failing to disclose his efforts to eliminate *any* path forward for Alpha . . . to litigate its claims" and "seeks to deny relief to Alpha . . . anywhere" as Peter is using the dismissal of Thanasi's derivative claims in this case to persuade the court in Alpha's lawsuits to dismiss Alpha's claims based on res judicata.  Thanasi maintains the documents "rebut Peter's suggestion of mootness . . . ."  His counsel's supporting declaration again advances her belief that these "items are relevant to the issues on appeal for the reasons discussed in this motion and in the opening brief."  (Some capitalization omitted.)

16

We decline to take judicial notice of these items due to the improper incorporated-by-reference argument. But we conclude further that the demurrer papers are not relevant. (See *Aquila, Inc. v. Superior Court* (2007) 148 Cal.App.4th 556, 569 [judicial notice is confined to those matters which are relevant to the issue at hand]; *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13 ["As a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal"].) It is for the lower court in the Alpha lawsuits to pass on the merits of Peter's demurrers; the operative fact that moots Thanasi's derivative claims is Alpha's effort to take its own remedial action against Peter and Litsa. This fact also deprives Thanasi of standing to maintain the derivative claims, as we explain below.

III. *Thanasi's Breach of Contract/Good Faith Fair Dealing Causes of Action*

A. *First (Oral Breach of Contract) and Third (Breach of Covenant of Good Faith Fair Dealing) Causes of Action Regarding Future Inheritance*

As stated, the trial court sustained Peter's demurrer without leave to amend to Thanasi's first and third causes of action for breach of oral contract and breach of the covenant of good faith and fair dealing, which are based on allegations that in exchange for his unpaid legal services, Peter and Litsa promised he and his brothers would inherit the family businesses and their estate. It ruled Thanasi should have asserted them as compulsory cross-claims in Peter's legal malpractice action. It also ruled the first cause of action was a claim for a contract to make a will under Probate Code section 21700, but that Thanasi did not allege facts supporting the requirements for such a claim.

Thanasi concedes the court properly sustained the demurrer, but only because these claims, which he appears to agree sound in contract to make a

17

will, are unripe for adjudication as Peter and Litsa are still alive. He argues that his future claims therefore will not be barred by res judicata or the statute of limitations.

These arguments—which merely propose a different ground on which the order is correct—give us no reason to disturb the court's ruling. Even on demurrer review, we presume the court correctly ruled on the unchallenged compulsory cross-complaint theory as to these two causes of action. (Accord, *Beverage v. Apple, Inc.* (2024) 101 Cal.App.5th 736, 752; *Pinto Lake MHP LLC v. County of Santa Cruz* (2020) 56 Cal.App.5th 1006, 1012 [judgment or order is presumed correct even on appeal from an order sustaining demurrer].) Thanasi's assertions about the viability of future claims he may bring upon Peter and Litsa's deaths in effect seek an advisory opinion, which we decline to address. (*Dow v. Lassen Irrigation Co.* (2022) 75 Cal.App.5th 482, 492 ["courts do not render advisory opinions on hypothetical future disputes"].) Likewise, we do not address Thanasi's arguments about his "[u]nappealed [c]laims," namely his causes of action for conversion (eighth), defamation (ninth), unjust enrichment (tenth), intentional interference with prospective economic (eleventh), declaratory relief (thirteenth), specific performance (seventeenth), as well as his derivative claim for unjust enrichment (nineteenth) which he says may be viable in the future despite his failure to challenge the judgment as to them.

B. *Second Cause of Action for Breach of Oral Contract for Reimbursement of Private Tuition Expenses*

"The elements of a breach of oral contract cause are: '(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach.' " (*Aton Center, Inc. v. United Healthcare Ins. Co.* (2023) 93 Cal.App.5th 1214,

18

1230.) The second cause of action for breach of oral contract relates to Peter's alleged promise to pay for or reimburse Thanasi for his children's private schooling. The trial court ruled the claim violated the statute of frauds, codified at Civil Code section 1624 (*Zakk v. Diesel* (2019) 33 Cal.App.5th 431, 449), invalidating contracts for a " 'special promise to answer for the debt . . . of another' " unless made in writing.[7] It ruled Thanasi did not "assert nor demonstrate that [any exception to the statute of frauds provided in [Civil Code section] 2794 applies."

Given Thanasi responded to Peter's first demurrer, the question for the trial court was whether Thanasi's pleading was on its face incapable of amendment. (*City of Stockton v. Superior Court*, *supra*, 42 Cal.4th at p. 747.) Thanasi argues on appeal he can allege "Peter attended private school and believed his grandchildren should too because it provides a superior education to public school, and public schools were (in his view) too liberal," bringing the claim within the Civil Code section 2794, subdivision (4) exception for a promise made "upon a consideration beneficial to [Peter] . . . ." Peter maintains Thanasi cannot allege any such exception because "a grandchild attending a private school is not 'consideration' to the

---

[7] Civil Code section 1624 provides in part: "(a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (2) A special promise to answer for the debt, default, or miscarriage of another, except in the cases provided for in [Civil Code s]ection 2794."

Civil Code section 2794 provides, in part: "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: [¶] . . . [¶] (4) Where the promise is upon a consideration beneficial to the promisor, whether moving from either party to the antecedent obligation, or from another person."

19

grandparent" as a matter of law and any interest Peter had in their schooling was "too attenuated" to remove the promises from the statute of frauds.

We hold the trial court erred by sustaining the demurrer to this claim on statute of frauds grounds. Thanasi alleges Peter and Litsa promised *him* they would pay for his children to attend private school through high school. "[T]here is not a contract to answer for the debt of another within the statute of frauds where the alleged guarantor promises the *debtor*, rather than the creditor to pay the former's debt." (*King v. Smith* (1948) 33 Cal.2d 71, 74; see also *20th Century Cigarette Vendors v. Shaheen* (1966) 241 Cal.App.2d 391, 395 ["the statute of frauds in no way bars enforcement of the third party beneficiary contract, since the promise to pay [a] note was made to the debtor"].) Peter's cited cases—*McClenahan v. Keyes* (1922) 188 Cal. 574 and *Swim v. Juhl* (1925) 72 Cal.App. 363—are inapposite on this point. (*McClenahan v. Keyes*, at pp. 582-583 [mother's agreement with doctor to pay for daughter's medical treatments was an unenforceable oral contract to answer for the debt of another]; *Swim v. Juhl*, at p. 364 [mother's promise to pay medical debt in case of the default of her daughter, who employed the physician, was void under statute of frauds].)

Peter also argues the claim is untimely under Code of Civil Procedure section 339's two-year statute of limitations as "Thanasi's children have attended private elementary school and high school for over a decade before this lawsuit" and it is untenable for the absence of reasonable reliance on the alleged promises. The trial court rejected Peter's statute of limitations arguments, correctly pointing out that under *Lee v. Hanley* (2015) 61 Cal.4th 1225, any " ' " 'defect must clearly and affirmatively appear on the face of the complaint; it is not enough that the complaint shows that the action may be barred.' " ' " (*Id*. at p. 1232; see also *Committee for Green Foothills v. Santa*

20

*Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42; *Spears v. Spears* (2023) 97 Cal.App.5th 1294, 1304.) The court relied on Thanasi's allegations that Peter and Litsa's promises were "repeatedly made" and concluded they showed Thanasi "could have reasonably relied on [Peter's] representations until June of 2020," when Thanasi received a communication from Peter's lawyer. Thanasi alleges that by this June 2020 letter, "Peter made clear that he no longer intended to provide [Thanasi] *the things he had previously promised . . . .*" (Italics added.) Thanasi filed suit less than two years later, in February 2022.

Under Code of Civil Procedure section 339, for a breach of an oral contract cause of action, "a two-year [statute of limitations] period governs. [Citations.] A cause of action for breach of a contract generally accrues upon the alleged breach. [Citation.] If a contract calls for a party's performance on separate occasions such that the contractual duties are divisible, each breach triggers a separate limitations period. [Citation.] To determine whether breach of an agreement to repay a debt gives rise to one or multiple limitations periods, a court must first examine whether the contract requires periodic payments. [Citation.] If it does, then the court must then 'determine whether or not the duty to make a [periodic] payment is divisible from the duty to pay the full amount of the debt.' " (*Spears v. Spears, supra,* 97 Cal.App.5th at pp. 1304-1305.)

The first amended complaint refers to Peter's "continual promises" to pay for Thanasi's children's private schooling. It does not set out the ages of Thanasi's children, but Thanasi alleges that "[t]wo of [his] children are now in college while the third is still in high school." Thanasi's pleading "does not disclose enough details about [his] agreement [with Peter and Litsa] to determine how to apply the two-year statute of limitations," but because

21

Thanasi's children are of different ages, it suggests the private school payments were intended to be periodic. This "creates a possibility that the periodic payments were intended to be divisible from the overall obligation to repay the debt, thus triggering separate limitations periods for each payment." (*Spears v. Spears*, *supra*, 97 Cal.App.5th 1294, 1305.) Further, Thanasi's "pleading does not indicate how many payments [Peter and Litsa were] obligated to make or specify the amount of the payments from which one could calculate the number of required payments or the date when the last payment was due," and the fact the agreement was made years ago does not permit an inference the debt was intended to be repaid such that all applicable limitations periods would have expired. (Accord, *ibid*.)[8] This makes it improper to sustain a demurrer on statute of limitations grounds. (*Ibid*.)

---

[8]    *Spears* involved an alleged oral agreement by a father to his son to repay $60,000 received from the State of California that was intended for the son and his wife. (*Spears v. Spears*, *supra*, 97 Cal.App.5th at pp. 1298, 1305.) The son alleged the father promised to pay the money in periodic payments and that the debt would become due and payable in full upon his death. (*Id*. at p. 1298.) He alleged his father never made any payments and after his death the son brought a creditor's claim on the father's estate. (*Id*. at pp. 1297, 1305.) The Court of Appeal—treating the defendant's arguments as equivalent to a demurrer and applying rules applicable to the two year statute of limitations (*id*. at p. 1304)—held the claim was not properly dismissed on statute of limitations grounds given the fact the payments were intended to be periodic and could have been divisible from the overall obligation to repay the debt. (*Id*. at p. 1305.) The court explained that the father and son's "agreement was made over ten years ago, but we cannot infer from that fact alone that the debt was intended to be repaid more than two years prior to [the father's] death so that all applicable limitations periods would have expired before he died. The trial court therefore could not have dismissed this aspect of [the son's] claim based on the statute of limitations." (*Ibid*.)

22

Peter's arguments on appeal do not demonstrate that the first amended complaint's allegations clearly and affirmatively show this claim is time-barred under the two-year statute of limitations (Code Civ. Proc., § 339, subd. (1)), only that it *may* be barred. There is no basis to sustain the demurrer on statute of limitations grounds.

As to this claim, Thanasi further contends he can amend his pleading to state a promissory estoppel cause of action.[9] He also contends more generally his allegations state a separate cause of action for breach of an oral or implied general partnership agreement. According to Thanasi, neither the statute of frauds nor the two-year statute of limitations bars his claims related to the private school payments or partnership agreement.

Because we hold the court erred by sustaining the demurrer to the second cause of action, Thanasi following remand will have an opportunity to seek leave of court to allege a promissory estoppel claim. (Code Civ. Proc., § 473, subd. (a)(1) ["court may . . . in its discretion, after notice to the adverse party, allow, upon any terms as may be just, an amendment to any pleading . . . in other particulars"]; see *Mac v. Minassian* (2022) 76 Cal.App.5th 510, 519 [California courts have a policy of great liberality in allowing

---

[9] "Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.' " (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transp. Authority* (2000) 23 Cal.4th 305, 310.) It "was developed to do rough justice when a party lacking contractual protection relied on another's promise to its detriment." (*Id.* at p. 315.) Under the doctrine, " '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.' " (*Id.* at p. 310.) The promisee's reliance must be both reasonable and foreseeable. (*Laks v. Coast Federal Savings & Loan Assn.* (1976) 60 Cal.App.3d 885, 890.)

amendments at any stage of the proceeding so as to dispose of cases upon their substantial merits where the authorization does not prejudice the substantial rights of others].)

IV. *Asserted Claim for Breach of Oral or Implied General Partnership Agreement*

Thanasi contends he should be permitted to amend his pleading to allege that Peter and Litsa breached an oral or implied general partnership agreement. Though Thanasi says he makes this claim only in connection with his second oral breach of contract cause of action that we have held survives demurrer, in fact he argues he can amend his pleading with these new allegations to assert viable claims for breach of fiduciary duty (seventh cause of action), declaratory relief (thirteenth cause of action) and an accounting (fifteenth cause of action).

As to this purported general partnership claim, Thanasi argues he can "more precisely allege that a general partnership was formed by an oral and/or implied agreement among himself, his parents and his brothers to carry on as co-owners of four businesses for profit, with an overarching purpose to create and share family wealth. Those businesses are Alpha . . . , its subsidiary PenChecks, the Preovolos Family Limited Partnership (the 'Preovolos LP') and Rose Hedge Limited Partnership #1 ('Rose Hedge')" and that "each family member/partner contributed funds and/or work, labor and services in exchange for an equal share of the profits and losses, with the concomitant right and responsibility to participate in managing and controlling the partnership businesses." Thanasi argues he can allege "these businesses are presumed to be partnership property since they were purchased with partnership assets under Corporations Code section 16204, subdivision (c)" and that Peter and Litsa "breached this agreement in and

24

after June 2020 by (i) treating the partnership's property as their own, in violation of Corporations Code section 16203 . . . and (ii) denying Thanasi an equal share of the partnership profits, as required by Corporations Code section 16401, subdivision (b)."

Peter responds that Thanasi's attempt to allege the existence of a general partnership is "futile" because he cannot adequately allege facts supporting such a claim; any such partnership would be voidable at Peter's election due to Thanasi's ethical lapse in entering into such an agreement as Peter's attorney; and the claim would be untimely. On his first point, Peter argues Thanasi's factual allegations in his first amended complaint—that he expected to receive an interest in the family businesses as an *inheritance*— negate the possibility of a general partnership giving Thanasi a *present* right to share in profits. This argument invokes the so-called "sham pleading" doctrine.

There is merit to Peter's sham pleading argument, as Thanasi sets out without explanation a fundamentally different factual scenario from his original pleading. The difference between an agreement for a future right to inherit an interest in two of the family businesses (Alpha and PenChecks), and an agreement to enter into a partnership with a present right to share in profits and losses of not only those businesses but two others, is significant. "Under the sham pleading doctrine, 'if a verified complaint contains allegations fatal to a cause of action, a plaintiff cannot cure the defect by simply omitting those allegations in an amended pleading without explanation.' [Citations.] 'But amendment in this manner is allowed where a plaintiff clearly shows that the earlier pleading is the result of mistake or inadvertence.' [Citation.] '[T]he sham pleading doctrine "cannot be mechanically applied." [Citation.] It "is not intended to prevent honest

25

complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts." [Citation.] Instead "the rule must be taken together with its purpose, which is to prevent [an] amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully." ' " (*Dones v. Life Insurance Company of North America* (2020) 55 Cal.App.5th 665, 688.) The rule applies even when a complaint is not verified. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742-743.)

"Unless the plaintiff provides a 'plausible' explanation for dropping the harmful allegations (such as the need to correct a mistaken allegation or to clarify ambiguous facts), the trial court will take judicial notice of the harmful allegations and disregard the new and contrary allegations." (*Smyth v. Berman* (2019) 31 Cal.App.5th 183, 195.) The doctrine will not apply where an amended pleading is consistent with prior versions of a complaint. (See *Zakk v. Diesel*, *supra*, 33 Cal.App.5th at p. 449 [sham pleading doctrine inapplicable where amended pleading alleging multiple oral contracts was not inconsistent with prior iterations of the complaint, which, while alleging a single overarching oral or implied-in-fact contract, in context involved more than one contract].) But it can be applied where an amendment "alter[s] the fundamental facts on which the claim was based." (Compare *Dones v. Life Insurance Co. of North America*, *supra*, 55 Cal.App.5th at p. 688 [rejecting application of doctrine where amendment did not alter fundamental facts on which claim was based].)

In reply, Thanasi maintains the sham pleading doctrine does not apply. According to him, his first amended complaint's allegations and the new allegations are not inconsistent; his first pleading "do[es] not state that [he] performed services or lent money solely and exclusively in exchange for the promised inheritance, but manifest an intention and expectation of sharing

[the family businesses'] profits during the parties' lifetimes." He points to the alleged facts that the primary family business, Alpha, is owned by all five family members and that he acquired an interest in Alpha during his lifetime.[10] He cites paragraph No. 17 of the first amended complaint as an example of an allegation showing Peter promised to equally share ownership of the family businesses during his lifetime *as well as* pass it down as an inheritance.

We cannot read the operative complaint in that manner. Paragraph No. 17 of the first amended complaint reads in part: "Peter and Litsa always explained that they were a family and that everyone in the family had to work together. They would repeatedly tell [Thanasi] and his siblings that they needed to work hard and do their best because they were really working for their future as all the assets would be passed down to them when Peter and Litsa passed. In fact, this was a constant discussion around the family dinner table." Elsewhere, the complaint describes the tasks Thanasi and his siblings performed without compensation "based upon the expectation of Peter and Litsa and in exchange for the promise to receive the family assets *in the future*." (Italics added.) The complaint alleges "Peter and Litsa required [Thanasi] and his siblings to provide services on behalf of the organization because it was part of their obligation to the family" and that

---

10    The cited portion of the first amended complaint, paragraph No. 30, states: "Plaintiff and his brothers first acquired their interest in Alpha . . . in 1979, via a gift from their parents. They also received additional shares in 1985 and in 1997 from their grandmother, who was an original investor in the business and provided the initial seed money. Despite their ownership interest, Peter and Litsa initially excluded Plaintiff and his siblings from company governance." There are no allegations indicating Peter and Litsa promised to give all their children a present equal share in all of the family businesses.

27

they "[c]ontinuously reinforced" that "family is paramount, every member had to contribute, and that we were building a 'legacy' *which we would inherit*." (Italics added.) Thanasi alleges they "were going to inherit the collectively built wealth." He alleges "[a]ll work was performed by [him] and his siblings for the promise of their inheritance."

Thanasi's new allegations would drastically change the theory; his proposed family partnership claim would add two entirely new businesses, as well as an agreement to *presently* share equally in Alpha's and PenCheck's profits and losses. In our view, the claim would "alter the fundamental facts upon which the [oral contract] claim was based" (*Dones v. Life Insurance Co. of North America, supra*, 55 Cal.App.5th at p. 688) and prevents Thanasi from making such new allegations.

V. *Thanasi's Declaratory Relief (Thirteenth) Cause of Action and Failure to Assert it as a Compulsory Cross-Claim in Peter's Legal Malpractice Action*

As stated in the above discussion, Thanasi now admits he did not assert any cross-complaint in Peter's legal malpractice action. The trial court ruled that Thanasi's first, third, eighth, tenth and thirteenth causes of action (for breach of oral contract and covenant of good faith and fair dealing, conversion, unjust enrichment and declaratory relief) all "relate to [Thanasi's] legal services, including those related to the post-marital agreement and irrevocable trust" (some capitalization omitted) and thus he should have raised those as compulsory cross-claims in the legal malpractice action.

Thanasi's challenge to this portion of the court's ruling is limited to his thirteenth declaratory relief cause of action, which he contends is not related to the legal malpractice action. In this cause of action, Thanasi reincorporated all of his prior allegations, then alleged "a controversy exists

between the parties regarding their respective rights and duties towards each other." He stated he "seeks a judicial declaration stating that he performed services, including legal services, for which he should be paid *as well as a judicial declaration that he is entitled to an additional ownership interest in various family businesses*." (Italics added.) On appeal, Thanasi maintains this claim "relates to the disputed ownership of family businesses and whether the parties' promises and contracts create a general partnership." He states his legal services "pre-date and are *unrelated by subject matter* to his limited task of drafting the 2014 post-marital agreement and irrevocable trust." (Some capitalization omitted.)

To state a claim for declaratory relief, the plaintiff must allege facts showing there is a dispute between the parties concerning their legal rights, constituting an "actual controversy" within the meaning of the declaratory relief statute. (Code Civ. Proc., § 1060;[11] *Artus v Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 930.) " 'The language of Code of Civil Procedure section 1060 appears to allow for an extremely broad scope of an action for declaratory relief[.]' " (*Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 181.) A plaintiff need not establish that he is also entitled to a favorable declaration. (*Ludgate Ins. Co. v. Lockheed Martin Corp.* (2000) 82

---

[11] Code of Civil Procedure section 1060 provides in part: "Any person interested under a written instrument, excluding a will or a trust, or under a contract, or who desires a declaration of his or her rights or duties . . . in respect to . . . property, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract."

29

Cal.App.4th 592, 606; accord, *Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550 [where pleading requirements for declaratory relief are met, "the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration"].) But " 'where a complaint sets forth a good cause of action for declaratory relief regarding only a disputed question of law, declarations on the merits unfavorable to a plaintiff have been upheld although such determinations were made in the form of a judgment sustaining a demurrer.' " (*Nede Mgmt., Inc. v. Aspen American Ins. Co.* (2021) 68 Cal.App.5th 1121, 1131, quoting *Jefferson, Inc. v. City of Torrance* (1968) 266 Cal.App.2d 300, 303.)

In sustaining Peter's demurrer to Thanasi's declaratory relief claim, the court quoted from the complaint the allegations that Thanasi had loaned Peter funds for purposes of making the initial capital contribution for PenChecks, and that Peter told Thanasi he would " 'repay it when he could, and that the worst-case scenario was that he would get it back as part of his inheritance.' " It then ruled: "To the extent [Thanasi] relies upon promises as to an inheritance, the claim is not permissible. (Code Civ. Proc., § 1060; Prob. Code, § 21700[, subd.] (a). To the extent [Thanasi] relies upon the claim for repayment of the $10,000 loan made in 2003, [Thanasi] fails to explain how he could be entitled to ownership in PenChecks based on a loan when the promise was for repayment, not ownership in PenChecks." The court further ruled Thanasi "fail[ed] to explain how the claim is not time-barred."

Thanasi's claims do not raise disputed questions of law. And again, Thanasi was responding to Peter's first demurrer, so the trial court should have given Thanasi leave to amend to plead entitlement to a judicial declaration regarding Peter's obligation to repay the $10,000 loan, or facts

30

permitting him to plead around any statute of limitations issue with regard to that promise. We also conclude Thanasi should have been given leave to amend to state facts supporting the requirements of Probate Code section 21700. Under subdivision (a)(4) of Probate Code section 21700, a contract to "make a will or devise or other instrument" need not be in writing if it can be established by "[c]lear and convincing evidence of an agreement between the decedent and the claimant or a promise by the decedent to the claimant that is enforceable in equity." On a demurrer, it is irrelevant whether Thanasi can prove such a claim. (*Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 47 [on review of an order sustaining a demurrer, " ' "the question of plaintiff's ability to prove these allegations, or the possible difficulty in making such proof does not concern the reviewing court" ' "].) And because Thanasi's claim is for declaratory relief, he need not establish he is entitled to a favorable judicial declaration. But in view of the sham pleading doctrine barring any claim changing the fundamental facts of Thanasi's pleading, Thanasi may not support an amended declaratory relief cause of action with the entirely new general partnership theory.

## VI. *Fraud (Fourth, Fifth, Sixth) Causes of Action*

As stated, the trial court sustained Peter's demurrer to Thanasi's fraud (fourth, fifth and sixth) causes of action without leave to amend, ruling they did not contain sufficiently particular allegations. Specifically, the court ruled they lacked specifics "at a minimum, as to when, by what means, and how the representations were made"; that is, Thanasi did not state "how often the alleged promises were made, whether [Peter and Litsa] or both made the promises at specific times, or whether they were spoken, written, or made in some other manner"; and "there [were] no facts to support [Peter and

31

Litsa] 'knew [the representations] to be false' and 'were made with the intent to defraud and deceive [Thanasi].' "

Thanasi contends he should have been granted leave to amend his fraud causes of action, and if he is given the opportunity, he can combine the three causes of action into two for false promise and intentional misrepresentation. As discussed below he proffers allegations to support his claims, using civil jury instructions (CACI Nos. 1900, 1902) as templates.

A. *False Promise*

For a false promise cause of action,[12] Thanasi proffers the following allegations:

• "Thanasi currently owns approximately [five] percent of the outstanding shares in Alpha . . . , [five] percent of Rose Hedge, and 16.67 percent of Preovolos LP. On several occasions from Thanasi's teen years through June 2020, Peter verbally promised Thanasi at regular (usually weekly) family gatherings and meetings that the family members would equally share ownership of the family businesses (i.e., Alpha . . . [and thereby PenChecks], Rose Hedge and Preovolos LP.)"

• "Peter did not intend to perform these promises when he made them . . . ."

_____

[12] The elements of a cause of action for promissory fraud are: " '(1) a promise made regarding a material fact without any intention of performing it; (2) the existence of the intent not to perform at the time the promise was made; (3) intent to deceive or induce the promisee to enter into a transaction; (4) reasonable reliance by the promisee; (5) nonperformance by the party making the promise; and (6) resulting damage to the promise[e].' [Citation.] As with any other form of fraud, each element of a promissory fraud claim must be alleged with particularity." (*Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1498; see *Gruber v. Gruber* (2020) 48 Cal.App.5th 529, 540.)

- "Peter intended that Thanasi rely on these promises and exploited their relationship of trust to coerce a wide array of uncompensated work, labor and services out of Thanasi" including "without limitation legal, business, accounting and human resources work."

- "Thanasi reasonably relied on Peter's promises . . . and performed the work, labor and services requested of him by Peter."

- "Peter did not transfer an equal (20 [percent]) ownership of Alpha . . . , PenChecks, Rose Hedge or Preovolos LP to Thanasi, but instead reneged on his promises in or about June 2020."

- "Thanasi was harmed . . . by not receiving an equal share of the profits of Alpha . . . , PenChecks, Rose Hedge and Preovolos LP."

- "Thanasi's reliance on Peter's promises was a substantial factor in causing his harm."

Because this proposed cause of action relies on the contradictory factual allegations about the parties' agreement to form a general partnership, facts we disregard under the sham pleading doctrine, we conclude Thanasi has not demonstrated he should be granted leave to amend to state such a claim.

B. *Intentional Misrepresentation*

"The elements of intentional misrepresentation, or actual fraud, are: '(1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to defraud (i.e., to induce reliance); (4) justifiable reliance; and (5) resulting damage.' " (*Anderson v. Deloitte & Touche* (1997) 56 Cal.App.4th 1468, 1474; see also Civ. Code, §§ 1709, 1710.) These elements must be pleaded " ' "factually and specifically[ ], and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect." ' " (*Quelimane Co. v. Stewart Title Guaranty Co.*, *supra*, 19 Cal.4th

33

at p. 47; *Rutherford Holdings, LLC v. Plaza Del Rey* (2014) 223 Cal.App.4th 221, 234.)

For his proposed intentional misrepresentation claim, Thanasi proffers allegations that Peter "repeatedly" orally promised "[o]n several occasions from Thanasi's teen years through June 2020" and "at regular (usually weekly) family meetings and gatherings that each member of the family had a mandatory duty and familial obligation to perform uncompensated work, labor and services to benefit Peter and the family businesses as and when directed by Peter." He says he will allege Peter's representations were false "because children have no such duty"; Peter knew the representations were false and made them to induce Thanasi to provide uncompensated work and to rely on the representations; Thanasi justifiably relied on them given Peter's "position of authority" as father and patriarch of the family; Thanasi was harmed by the lack of compensation and by not receiving an equal share of the profits of Alpha, PenChecks, Rose Hedge and Preovolos, L.P.; Thanasi would not have performed the uncompensated work but for Peter's representations; and Thanasi's reliance was a substantial factor in causing his harm.

Peter responds with several arguments as to why this claim is still insufficient, including that it is fatally nonspecific and Thanasi does not allege facts showing he did not intend to perform on his promises or knew his representations were false *at the time they were made.* Peter argues the complaint shows Peter's perception of Thanasi's disloyalty, which caused him to change his mind and "disavow the purported representations and promises." In addition to arguing the allegations are sham pleadings, Peter argues we should disregard Thanasi's new allegations on grounds they allege Peter's expression of nonactionable opinion about his and his siblings'

34

" 'mandatory duty and familial obligation' " to perform uncompensated work for the family's behalf.  In a footnote, Peter maintains any reliance by Thanasi on his opinions, assuming they addressed a legal duty, would be unreasonable in any event.

Peter's latter arguments have merit.  His alleged remarks about familial obligations or duties can only be characterized as one of opinion, not a false factual assertion.  It is settled that expressions of opinion are not generally treated as factual representations for purposes of maintaining a fraud claim.  (See *Neu-Visions Sports, Inc. v. Soren/McAdam/Bartells* (2000) 86 Cal.App.4th 303, 308.)  An exception will be made when one party states an opinion as a fact, or holds himself out as possessing superior information regarding the subject, but in that case the other party must be "so situated that he may reasonably rely upon such supposed superior knowledge or special information . . . ."  (*Ibid.*)

That cannot be the case here.  The complaint's allegations show that Thanasi began providing legal services for Peter and Litsa "[b]eginning in or about 1996 . . . ."  It is unreasonable for Thanasi, an attorney, to rely on Peter's expressions about a child's uncompensated labor being a familial obligation or duty so as to maintain a fraud claim based on those assertions. " '[W]hether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts [alleged].' "  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239.) A demurrer may properly be sustained where plaintiffs allege in support of a fraud claim statements on which no reasonable person could rely.  (See, e.g., *Murphy v. Twitter, Inc.* (2021) 60 Cal.App.5th 12, 40 [dealing with fraud prong of Unfair Competition Law].)  That is the case here.  Absent Thanasi's

ability to allege reasonable reliance on such statements, his intentional misrepresentation claim fails.

## VII. *Breach of Fiduciary Duty* (*Seventh*) *Cause of Action and Constructive Trust Remedy*

In his seventh cause of action for breach of fiduciary duty, Thanasi reincorporated his prior allegations, and alleged that "[b]y virtue of the attorney-client relationship that existed between Peter and Litsa, on the one hand, and [Thanasi], on the other hand, as well as the relationship that existed between Peter and Litsa as trustees of the subject trusts, and [Thanasi] as the trust protector, a fiduciary duty existed." He further alleged Peter and Litsa "knowingly acted against [his] interests . . . and their actions were a substantial factor in causing [him] harm . . . ."

The trial court sustained Peter's demurrer to this cause of action without leave to amend, ruling Thanasi "does not deny that [he], as an attorney, owed the fiduciary duty, not the clients—[Peter and Litsa]—to [Thanasi]. While [Thanasi] asserts he has alleged other relationships, [he] fails to explain how any of them created a fiduciary duty from [Peter and Litsa] to [him]."

Thanasi does not challenge that part of the court's ruling as to who owed the fiduciary duties; he contends the court erred by sustaining the demurrer to this claim without leave to amend. Proffering new allegations, he maintains he can state a cause of action based on Peter and Litsa's fiduciary duties of loyalty and care as partners in the Preovolos family general partnership under Corporations Code section 16404. He argues he can allege they did so by "(i) failing to account to the partnership for the partnership's profits or to hold them as trustee; and (ii) dealing with the partnership in the conduct of its businesses (i.e., Alpha . . . PenChecks, Rose

36

Hedge and Preovolos LP) in a manner adverse to the partnership." He says he can allege that "[b]y doing these things, Peter and Litsa knowingly acted against Thanasi's interest and/or acted only out of self-interest," that he "did not give informed consent to Peter and Litsa's actions" and he was harmed by the breach. Acknowledging that a constructive trust is an equitable remedy and not a cause of action, Thanasi maintains he can establish the conditions necessary for such relief as part of his fiduciary duty cause of action.

Because Thanasi's proposed amendment depends on the new and factually contradictory general partnership allegations, this claim fails. Thanasi provides no basis to disturb the trial court's demurrer ruling as to his claims for breach of fiduciary duty or constructive trust.

VIII. *Intentional Infliction of Emotional Distress* (*Twelfth Cause of Action*)

"To state a cause of action for intentional infliction of emotional distress, a plaintiff must allege the following elements: ' " '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' " ' [Citation.] For conduct to be outrageous, it ' "must be so extreme as to exceed all bounds of that usually tolerated by a civilized community." ' " (*Faunce v. Cate* (2013) 222 Cal.App.4th 166, 172; see also *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050-1051.) The defendant's conduct must also be " ' " 'intended to inflict injury or engaged in with the realization that injury will result.' " ' " (*Hughes v. Pair*, at p. 1051.) " 'Severe emotional distress means " 'emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it.' " ' " (*Ibid*.) "Whether behavior is extreme and outrageous is a legal

37

determination to be made by the court, in the first instance." (*Faunce v. Cate*, at p. 172.)

In sustaining the demurrer to Thanasi's intentional infliction of emotional distress cause of action without leave to amend, the court ruled Thanasi could not rely on his fraud allegations, the promises of an inheritance, the filing of lawsuits or the defamation claim.  It ruled:  "What remains are essentially allegations of a failure to compensate a child for his efforts towards building family businesses."  It ruled such allegations were insufficient to show Peter and Litsa's conduct was extreme and outrageous.

Thanasi does not challenge this ruling, but argues the court erred by denying him leave to amend.  He contends he can amend to state a cause of action with the following allegations:

• "Peter and Litsa engaged in the prolonged exploitation and abuse of Thanasi, beginning during his teen years and continuing through June 2020, treating him as property and an indentured servant by manipulating and exercising coercive control over him anchored by false promises of financial security, and then discarding him and betraying his trust when required to honor their promises."

• "Peter and Litsa abused their position of authority over Thanasi as his parents (particularly in a Greek Orthodox family) that gave them real or apparent power to affect Thanasi's pecuniary interests.  As his parents, Peter and Litsa knew Thanasi was particularly vulnerable to emotional distress in dealing with his family, and especially them."

• "Peter and Litsa knew their conduct would likely harm their son Thanasi due to mental distress."

38

• "Peter and Litsa intended to cause Thanasi emotional distress . . . , or knew emotional distress would probably result from their prolonged exploitation, abuse, manipulation and coercive control over him, followed by their betrayal of the love and trust he placed in them as his parents, with little or no thought to the probable effects of their conduct."

Thanasi says he would allege he "suffered severe and extreme emotional distress . . . in the form of prolonged suffering, anguish, grief, worry and shock" and that his parents' conduct "was a substantial factor in causing his prolonged suffering, anguish, grief, worry and shock."

We cannot agree Thanasi states a viable cause of action with these allegations of unspecific "abuse" and "exploitation," or his treatment as an "indentured servant," in view of the allegations concerning the specific types of uncompensated tasks Thanasi and his siblings were required to perform

for their family businesses.[13]  Such treatment by parents against a child's

assertedly pecuniary interests does not rise to the level of extreme and

outrageous conduct.  "In evaluating whether the defendant's conduct was

outrageous, it is 'not . . . enough that the defendant has acted with an intent

which is tortious or even criminal, or that he has intended to inflict emotional

distress, or even that his conduct has been characterized by "malice," or a

degree of aggravation which would entitle the plaintiff to punitive damages

for another tort.  Liability has been found only where the conduct has been so

outrageous in character, and so extreme in degree, as to go beyond all

---

13    The first amended complaint alleges:  "Plaintiff and his brothers were required to perform services on behalf of the company.  Naturally, the work performed was commensurate with the age and ability of the children.  For example, the children were required to clean out trash cans, clean the bathrooms, vacuum, etc.  As they got older, they were required to do the research filing, plan administration, computer IT and network integration work, accounting work and eventually legal work.  [¶]  . . .  [Thanasi] began performing office filing, legal research filing, and data entry beginning in the 4th grade.  Among other accomplishments, [Thanasi] built an excel spreadsheet to automate certain testing for the company.  [Thanasi] handled the plan administration duties for various smaller plans, including preparing breakouts and handling distributions, and completing plan tax returns. [Thanasi] handled administrative tasks, including billing assistant [*sic*], as well as plan amendments, as they were required to be performed.  To put this into perspective, [Thanasi] and his siblings did by hand what enterprise software does today.  [¶]  . . .  [Thanasi] and his siblings would go directly to the office after school and work until an after-school activity or until Peter and Litsa completed their work and it was time to go home for dinner. [Thanasi] and his brothers routinely worked 15-20 hours each week for the business, as well as weekend hours.  During tax season, [Thanasi] and his brothers worked well over 20 hours a week.  For [Thanasi], this work continued, even while he was in college.  [¶]  . . .  When [Thanasi] received his driver's license, he began running all family and business errands, and making all bank deposits, purchasing supplies for the company, and picking up the mail were added to his duties, until his siblings received their driver's licenses."

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Cochran v. Cochran* (1998) 65 Cal.App.4th 488, 496, quoting Rest.2d Torts, § 46, com. d, p. 73.)

Thanasi's new allegations about his vulnerability do not suffice either absent outrageous conduct. (See *Cochran v. Cochran, supra,* 65 Cal.App.4th at pp. 495-496 ["Assuming for discussion's sake alone that appellants have sufficiently alleged facts showing they were susceptible to emotional distress, ' "major outrage is still essential to the tort; and the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurts [*sic*], is not enough" ' "].)  It is true that "extreme and outrageous" conduct may arise from a defendant's knowledge that a plaintiff is peculiarly susceptible to emotional distress, by virtue of age, or some physical or mental condition or peculiarity. (See *Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1008 [defendant's conduct toward the plaintiff, a 13-year-old girl who had been drugged and raped], citing Rest.2d Torts, § 46, com. f, p. 75; *KOVR-TV, Inc. v. Superior Court* (1995) 31 Cal.App.4th 1023, 1027, 1029-1032 [television station employee interrogated on camera eleven-, seven- and five-year-old children about murder of next-door-neighbor children who were their playmates; the tape "reveal[ed] an uninvited, intrusive encounter by adult strangers with children of tender years not in a public place but in their home"]; *McDaniel v. Gile* (1991) 230 Cal.App.3d 363, 370, 372-373 [attorney who represented client in dissolution of marriage proceeding and withheld legal services when client rejected sexual advances engaged in outrageous conduct for purposes of overcoming summary judgment; attorney knew client was peculiarly susceptible to emotional distress because of her pending dissolution, and acted in a position of actual or apparent power over her].)  But Thanasi's bare

allegation that Peter and Litsa knew he was vulnerable to emotional distress dealing with family does not demonstrate some particular mental or physical condition on Thanasi's part from which we can infer extreme or outrageous conduct.

## IX. *Accounting* (*Fifteenth Cause of Action*)

In sustaining Peter's demurrer to Thanasi's claim for an accounting, the trial court correctly recognized that such a claim " 'requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting.' " (See *Sass v. Cohen* (2020) 10 Cal.5th 861, 869 ["An action for an accounting has two elements: (1) 'that a relationship exists between the plaintiff and defendant that requires an accounting' and (2) 'that some balance is due the plaintiff that can only be ascertained by an accounting' "; it is not available where a plaintiff alleges the right to recover a sum certain], quoting *Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179.) The court sustained Peter's demurrer to that cause of action, ruling Thanasi "cannot rely upon his allegations that [Peter and Litsa] owed [him] a fiduciary duty, as discussed above," then stating: "[Thanasi], in his opposition, discusses partners being required to account to other partners, but [Thanasi] has not alleged he was a partner with Defendant [*sic*]."

On appeal, Thanasi contends he should have been granted leave to amend on the basis of a "fiduciary (partnership) relationship." He maintains based on this relationship and a partner's right to access partnership books and records under Corporations Code section 16403, he can allege that a balance is due for his share of the partnership's profits and that he should be granted full access to the partnership's and Alpha's books and records. Thanasi also maintains he has similar rights to an accounting of Alpha's

42

books and records as a shareholder under Corporations Code section 1601. He argues he can allege "that a balance, which is not fixed and needs to be calculated via an accounting, is due for Peter and Litsa's conduct in stripping Alpha . . . of all cash, distributing all its profits to themselves, taking personal loans from the company without repaying them, and paying personal expenses through the company."

To the extent this claim rests on Thanasi's general partnership allegations, it is untenable. To the extent the accounting claim is based on Thanasi's right as an Alpha shareholder, Peter points out that Thanasi should not be granted leave to amend to state such a claim, because he cannot allege he made a written demand on Alpha that was rebuffed,[14] and the cause of action is against Peter as an individual rather than the corporation. In reply, Thanasi reiterates that he has a right as a partner to maintain an equitable action for an accounting. He states he cited Corporations Code section 1601 "as ancillary support only, to show his right to inspect Alpha['s] . . . books and records." He concedes "that a proper written demand is required to invoke this right" but argues that "does not eliminate [his] right to a *partnership* accounting under [Corporations Code] section 16405, subdivision (b)."

Thanasi's arguments do not demonstrate he can allege a viable shareholder claim to inspect Alpha's books and records. Corporations Code section 1601 requires, inter alia, that a corporation make available for inspection by any shareholder the corporation's "accounting books, records, and minutes of proceedings" "upon *the written demand on* [*a*] *corporation* of

---

14    Peter states Thanasi's inability to make such an allegation is "understandable because Thanasi has been corporate counsel for Alpha . . . since 1996, participates in many ongoing projects for the company including preparing its taxes, and already has access to its accounts."

any shareholder . . . *for a purpose reasonably related to the holder's interests as a shareholder*." (Corp. Code, § 1601, subd. (a)(1), italics added.) Section 1603 addresses the enforcement of this right by providing that, "[*u*]*pon refusal of a lawful demand for inspection*, the superior court of the proper county . . . may enforce the right of inspection with just and proper conditions." (Corp. Code, § 1603, subd. (a), italics added.) Thanasi could have, but has not made a proffer of factual allegations of the requisite condition for enforcement: that Alpha refused his written demand for inspection for a purpose related to his shareholder interests. The trial court did not err by sustaining Peter's demurrer to the accounting cause of action without leave to amend.

X. *Derivative Claims (Eighteenth and Twentieth Causes of Action)*

A. *The Law*

It is a " 'fundamental principle of corporate governance" (*Kanter v. Reed* (2023) 92 Cal.App.5th 191, 203) that the " '[m]anagement of a corporation, including decisions concerning the prosecution of actions, is vested in its board of directors' " not its shareholders. (*Apple Inc. v. Superior Court*, *supra*, 18 Cal.App.5th at pp. 231-232; see *Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1108.) Thus, shareholders have no direct cause of action or right of recovery against those who have harmed it. (*Grosset*, at p. 1108.)

"When the board refuses to enforce corporate claims, however, the shareholder derivative suit provides a limited exception to the rule that the corporation is the proper party plaintiff. In deference to the managerial role of directors and in order to curb potential abuse, the shareholder asserting a derivative claim must make a threshold showing that he or she made a pre[-]suit demand on the board to take the desired action." (*Apple Inc. v. Superior Court*, *supra*, 18 Cal.App.5th at p. 232.) " '[F]or a plaintiff to have

44

standing to file a derivative action, [plaintiff] must allege the corporation knew about the claim and was urged to pursue it to no avail or, in any event, the corporation would not have pursued the claim.' " (*Apple Inc.*, at p. 248, quoting *Patrick v. Alacer* (2008) 167 Cal.App.4th 995, 1004-1005.) The plaintiff's efforts to secure the desired board action, or the reasons for not making such effort, must be pleaded with particularity. (*Kanter v. Reed*, *supra*, 92 Cal.App.5th at p. 204.) The plaintiff must " ' "allege[ ] further that plaintiff has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which plaintiff proposes to file." ' " (*Ibid.*)

"[A] determination on demurrer that a plaintiff has failed to adequately allege demand futility means the plaintiff has yet to establish standing to pursue the derivative claims." (*Apple Inc. v. Superior Court, supra*, 18 Cal.App.5th at p. 248.) In *Apple Inc.*, the court held that "a plaintiff reasserting derivative claims in an amended complaint, after a sustained demurrer on demand futility grounds, remains subject to the standing requirement and must allege demand futility with respect to the board that would be addressing demand *at that time*." (*Ibid.*)

B. *Thanasi's Derivative Claims are Moot or Alternatively He Lacks Standing to Bring Them, Warranting Dismissal*

Thanasi's first amended complaint sought to allege derivative claims for breach of fiduciary duty (eighteenth cause of action) and declaratory relief/specific performance (twentieth cause of action).[15] In support of his

_____

[15] Thanasi also included a nineteenth derivative cause of action for unjust enrichment as to which Peter demurred, but Thanasi makes no argument about that claim on appeal.

derivative claim for breach of fiduciary duty, Thanasi alleged that Peter and Litsa purport to own shares of stock in PenChecks despite never having personally contributed or invested in PenChecks, and despite the fact that Alpha invested and contributed to the acquisition of PenChecks stock. He alleges "[d]espite these investments and contributions, Alpha . . . is not reflected as the owner of record of any of the stock of PenChecks. Rather, Peter and Litsa purport to own all shares of PenChecks. Accordingly, Peter and Litsa have . . . acted to put their own personal interests ahead of the interests of Alpha . . . ." The derivative declaratory relief cause of action is based on the same allegations, with a request for "an order . . . finding, declaring, determining, and adjudicating that all shares of stock purportedly owned by Peter and Litsa in PenChecks, save the shares owned by [Thanasi], be deemed the rightful property of and owned by Alpha . . . ."

As relevant to these claims, Thanasi alleged he had not made a demand upon the board of Alpha, which in effect consists of him, his brother Spiro, Peter and Litsa "because any such demand would be a futile and useless act" as "[i]t is clear that Peter and Litsa will not vote against their interests and any vote by the board on a demand by [Thanasi] would result in a 2-2

46

stalemate."[16]  On appeal, Thanasi says he can now allege he delivered a copy of his first amended complaint to Alpha's attorneys in an effort to secure the desired action from the board.

We have granted Peter's request for judicial notice of the fact that Alpha has since sued Peter (and Litsa, in the action relating to PenChecks) for breach of fiduciary duty and for a constructive trust as well as money had and received, relating to the acquisition of PenChecks shares and Peter's use of Alpha to pay for his personal expenses.

Because Alpha has in fact taken remedial action on its own behalf by filing suit, there is no issue remaining with respect to Thanasi's derivative claims.  Whether he properly alleged demand futility in his first amended complaint in support of derivative claims or should have been given leave to amend on that issue is moot.  Alternatively, in view of Alpha's suits, we hold the trial court properly sustained Peter's demurrer without leave to amend on grounds Thanasi lacks standing to bring these claims on Alpha's behalf. (*Apple Inc. v. Superior Court, supra*, 18 Cal.App.5th at p. 248 ["Viewed as a matter of standing, a determination on demurrer that a plaintiff has failed to

---

16      In sustaining Peter's demurrer without leave to amend, the trial court characterized Thanasi's futility allegations as "conclusory" and ruled Thanasi failed to allege facts supporting them.  It further ruled Thanasi did not allege compliance with Corporations Code section 800, subdivision (b)(2), which requires he "allege he 'has either informed the corporation or the board in writing of the ultimate facts of each cause of action against each defendant or delivered to the corporation or the board a true copy of the complaint which [he] proposes to file.' "  To the extent the court found Thanasi's allegations conclusory, it should have permitted him leave to amend to make more specific allegations, unless the operative complaint " 'on its face foreclose[d] any reasonable possibility of amendment.' " (*Apple Inc. v. Superior Court*, *supra*, 18 Cal.App.5th at p. 259.)  We need not address the matter further given that Alpha has since filed its own actions against Peter, mooting the issue of the adequacy of Thanasi's pleading on these derivative claims.

47

adequately alleged demand futility means that the plaintiff has yet to establish standing to pursue the derivative claims"].) There is no basis on which Thanasi can allege that it is futile to make a demand on the boards or that he is a proper plaintiff in any respect on these claims, as the causes of action belong to the corporation.

## XI. *Peter's Motion to Strike Punitive Damages*

Thanasi contends he adequately alleged specific facts demonstrating malice, oppression or fraud sufficient for punitive damages, pointing to the allegations he proffered in support of an intentional misrepresentation claim. But having held Thanasi cannot amend his complaint to allege such a viable claim, we likewise uphold the court's order striking his punitive damages allegations.

## DISPOSITION

We reverse the judgment and remand with directions that the trial court enter a new order overruling the demurrer to Thanasi's second cause of action for oral breach of contract, sustaining the demurrer to Thanasi's thirteenth cause of action for declaratory relief with leave to amend, and sustaining the demurrer to the remaining causes of action without leave to amend. The parties shall bear their own costs on appeal.

O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.